UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
WANDA BAEZ, SIIDE GIL-FREDERICK,
DANIELLE JOHNSON, and RESIDENTS                    Civ. No. 24-03282 (ER) (RFT)
TO PRESERVE PUBLIC HOUSING,
individually and on behalf of all similarly situated,

                        Plaintiffs,

            -against-

The NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY ASSISTANCE,
the NEW YORK CITY HOUSING AUTHORITY,
and BARBARA C. GUINN, in her individual capacity,

                        Defendants.
----------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NYCHA'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

DAVID ROHDE
Executive Vice President for Legal Affairs
    and General Counsel
New York City Housing Authority
Attorney for Defendant New York City
Housing Authority
90 Church Street, 11th Floor
New York, NY 10007
(212) 776-5206
seth.kramer@nycha.nyc.gov

Seth E. Kramer
  Of Counsel

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS .......................................................................................................5

    Applicable Statutes and Regulations ...................................................................................5

    Interim Recertification Procedures During the COVID-19 Pandemic ..............................6

    This Action.........................................................................................................................6

ARGUMENT ..........................................................................................................................7

    LEGAL STANDARD ON A MOTION TO DISMISS .....................................................7

    I.     PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION
           AGAINST NYCHA BASED ON DEPRIORITIZATION OF
           NYCHA RESIDENTS UNDER ERAP....................................................................8

    II.    RPPH LACKS STANDING TO ASSERT
           ITS CLAIMS AGAINST NYCHA.........................................................................9

    III.   PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION
           UNDER THE FHA AND TITLE VI ....................................................................10

           A.    Plaintiffs' Claims Under the FHA
                 Are Barred by the Statute of Limitations...................................................10

           B.    Plaintiffs Fail to State a Cause of Action Against NYCHA for
                 Intentional Discrimination Based on Race or National Origin .................13

           C.    Plaintiffs Fail to State a Cause of Action Against NYCHA for
                 Disparate Impact Discrimination Based on Race or National Origin........16

           D.    Plaintiffs Fail to State a Cause of Action for
                 Disability Discrimination or Failure to Accommodate.............................21

    IV.   PLAINTIFFS FAIL TO STATE A
           CAUSE OF ACTION FOR NEGLIGENCE ........................................................23

CONCLUSION.....................................................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*273 Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*,
   330 F. Supp. 3d 778 (E.D.N.Y. 2018) ................................................................12

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) ..............................................................................16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662–79 (2009) ..........................................................................7, 13

*Bd. of Educ. of North Rockland Cent. Sch. D. v. C.M. on behalf of P.G.*,
   744 F. App'x. 7 (2d Cir. 2018) ................................................................12

*Bebry v. ALJAC LLC*,
   954 F. Supp. 2d 173 (E.D.N.Y. 2013) ......................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................7

*Chardon v. Fernandez*,
   454 U.S. 6 (1981) ......................................................................................12

*Cornwell v. Robinson*,
   23 F.3d 694 (2d Cir. 1994) ......................................................................11

*Davis v. City of New York*,
   959 F. Supp. 2d 324 (S.D.N.Y. 2013) ......................................................21

*DeMar v. Car-Freshner Corp.*,
   49 F. Supp. 2d 84 (N.D.N.Y. 1999) ..........................................................23

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
   11 F.4th 68 (2021) ......................................................................................9

*Fair Hous. in Huntington Comm. v. Town of Huntington,* Case No. 02-cv-2787 (DRH) (ARL),
   2005 U.S. Dist. LEXIS 4552 (E.D.N.Y. Mar. 23, 2005) ..........................19

*Frederick v. Wells Fargo Home Mortg.,* Case No. 13-cv-7364 (DLI) (LB),
   2015 U.S. Dist. LEXIS 41328 (E.D.N.Y. Mar. 30, 2015)
   *aff'd*, 649 F. App'x. 29 (2d Cir. 2016) ................................................19, 20, 21

*Harris v. City of New York*,
   186 F.3d 243 (2d Cir. 1999) ....................................................................13

*Higgins v. 120 Riverside Blvd. at Trump Place Condominium,* Case No. 21-CV-4203 (LJL),
   2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022) ..........................................11

**Page(s)**

**Federal Cases (continued)**

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...........................................................................................9

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) .....................................................................................16, 17

*Jackson v. Cty. of Rockland*,
    450 F. App'x 15 (2d Cir. 2011) ........................................................................14

*Jones v. Volunteers of Am. Greater N.Y.,* Case No. 20-cv-5581 (MKV),
    2022 US. Dist. LEXIS 45103 (S.D.N.Y. Mar. 14, 2022) ...................................18

*Jordan v. Chase Manhattan Bank*,
    91 F. Supp. 3d 491 (S.D.N.Y. 2015) .................................................................11

*Katz v. New York City Hous. Pres. & Dev.,* Case No. 21-cv-2933 (JPC),
    2022 U.S. Dist. LEXIS 140876 (S.D.N.Y. Aug. 8, 2022) ...................................20

*L.C. v. LeFrak Org., Inc.*,
    987 F. Supp. 2d 391 (S.D.N.Y. 2013) ...............................................................13

*Logan v. Matveevskii*,
    57 F. Supp. 3d 234 (S.D.N.Y. 2014) .................................................................10

*Logan v. Matveevskii*,
    175 F. Supp. 3d 209 (S.D.N.Y. 2016) ...............................................................14

*Marinelli v. Chao*,
    222 F. Supp. 2d 402 (S.D.N.Y. 2002) ...............................................................11

*Martin v. New Am. Cinema Grp., Inc.,* Case No. 22-cv-05982 (JLR),
    2023 U.S. Dist. LEXIS 26014 (SDNY Feb. 15, 2023)..........................................8

*Moody v. Related Companies LP*,
    620 F. Supp. 3d 51 (S.D.N.Y. 2022) .................................................................17

*New York Urban League v. New York*,
    71 F.3d 1031 (2d Cir. 1995) ............................................................................17

*Palmer v. Fannie Mae*,
    755 F. App'x 43 (2d Cir. 2018) ........................................................................13

*Rahman v. Schriro*,
    22 F. Supp. 3d 305 (S.D.N.Y. 2014) .................................................................18

**Page(s)**

**Federal Cases (continued)**

*Reddington v. Staten Island Univ. Hosp.*,
   511 F.3d 126 (2d Cir. 2007) ...........................................................................7, 13

*Sinisgallo v. Town of Islip Hous. Auth.*,
   865 F. Supp. 2d 307 (E.D.N.Y. 2012) ..................................................................22

*Smith v. New York City Hous. Auth.*,
   410 F. Appx 404 (2d Cir. 2011) ...........................................................................14

*Stone v. 23rd Chelsea Assocs.*, Case No. 18-CV-3869 (VSB),
   2020 WL 1503671 (S.D.N.Y. Mar. 30, 2020) .......................................................11

*Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco*, Case No. 17-cv-8586 (CS),
   2019 U.S. Dist. LEXIS 50676 (S.D.N.Y. Mar. 26, 2019) ......................................19

*Tsombanidis v. W. Haven Fire Dep't*,
   352 F.3d 565 (2d Cir. 2003) ................................................................................21

*Whalen v. CSC TKR, LLC*, Case No. 11-cv-1834 (VB).
   2011 WL 6965740 (S.D.N.Y. Dec. 28, 2011) ......................................................11

*Williams v. New York City Hous. Auth.*,
   879 F. Supp. 2d 328 (E.D.N.Y. 2012) ..................................................................20

**State Cases**

*City of New York v. State of New York*,
   46 A.D.3d 1168 (3d Dep't 2007)..........................................................................24

*Ferreira v. City of Binghamton*,
   38 N.Y.3d 298 (2022)..........................................................................................25

*Hannibal General Contractors, Inc. v. St. Matthew and St. Timothy's Housing Corp.*,
   83 Misc. 2d 53 (Sup. Ct. N.Y. Co. 1975) ............................................................24

*Intercontinental Constr. Contr., Inc. v. New York City Hous. Auth.*,
   173 A.D.3d 453 (1st Dep't 2019)..........................................................................23

*J & E Industries of Ossining, Inc. v. Peekskill Hous. Auth.*,
   128 A.D.3d 638 (2d Dep't 2015)..........................................................................24

*Kahn v. City of New York/Section 8*,
   36 Misc. 3d. 143(A) (App. Term 1st Dep't 2012).................................................25

**Page(s)**

**State Cases (continued)**

*Kimmel v. State of New York*,
    49 A.D.3d 1210 (4th Dep't 2008) ........................................................................... 11

*Kovachevich v. New York City Hous. Auth.*,
    295 A.D.2d 255 (1st Dep't 2002) ........................................................................... 24

*Von Essen v. New York City Civil Service Comm'n*,
    3 A.D.3d 115 (1st Dep't 2003) ............................................................................... 25

**Federal Statutes and Regulations**

24 C.F.R. § 5.628 ............................................................................................................. 5

24 C.F.R. § 100.500 ....................................................................................................... 17

24 C.F.R. § 966.50 ........................................................................................................... 5

24 C.F.R. § 960.202 ......................................................................................................... 5

24 C.F.R. § 960.257 ................................................................................................... 5, 15

42 U.S.C. § 1437a ............................................................................................................ 5

42 U.S.C. § 1437d ............................................................................................................ 5

42 U.S.C. § 3613 ............................................................................................................ 10

**State Statutes**

N.Y. CPLR § 7803 .......................................................................................................... 24

N.Y. Gen. Mun. Law § 50-i ........................................................................................ 4, 24

N.Y. Pub. Hous. Law § 2 ................................................................................................. 5

N.Y. Pub. Hous. Law § 3 ................................................................................................. 5

N.Y. Pub. Hous. Law § 156 ............................................................................................. 5

N.Y. Pub. Hous. Law § 401 ............................................................................................. 5

N.Y. Pub. Hous. Law § 157 ..................................................................................... 4, 23, 24

Defendant New York City Housing Authority ("NYCHA") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint ("FAC") (*see* ECF No. 40) filed by Plaintiffs Wanda Baez ("Baez"), Siide Gil-Frederick ("Gil-Frederick"), Danielle Johnson ("Johnson"), and Residents to Preserve Public Housing ("RPPH") (collectively, "Plaintiffs"), as against NYCHA for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In the FAC, Plaintiffs allege Defendants New York State Office of Temporary and Disability Assistance ("OTDA"), Commissioner of OTDA Barbara C. Guinn ("Guinn"), and NYCHA discriminated against NYCHA tenants based on their race and national origin in violation of the Fair Housing Act ("FHA") and Title VI of the Civil Rights Act of 1964 ("Title VI") inasmuch as (1) OTDA deprioritized residents of public housing in distributing benefits under New York State's Emergency Rental Assistance Program of 2021 ("ERAP") and (2) NYCHA did not initiate or timely process annual income recertifications or interim recertifications (which tenants can request in between annual recertifications to receive reductions in income-based rent).  Plaintiffs also allege OTDA discriminated against NYCHA tenants based on their income in violation of the New York State Human Rights Law, and NYCHA discriminated against Plaintiffs based on their disabilities and negligently breached its duty to initiate and process income recertifications.

Individual Plaintiffs Baez, Gil-Frederick, and Johnson contend that once NYCHA became aware they had submitted applications under the distinct ERAP program, NYCHA was obligated to initiate interim recertifications on their behalf.  Plaintiffs, who refer to only unspecified information and belief, give no factual support for their conclusory allegation that

NYCHA has, in general, failed to properly process annual and interim recertification requests. In any event, because this Court has not certified the proposed class, it lacks jurisdiction to consider claims other than those raised by the named Plaintiffs.

Initially, RPPH's claims against NYCHA should be dismissed because it lacks standing. RPPH states its mission is to preserve public housing by advocating for adequate funding, improving quality of services, and increasing residents' decision-making authority, and they specifically fight against conversion of public housing developments to project-based Section 8 developments. Although RPPH may claim its members were impacted by NYCHA's alleged failure to conduct income recertifications, that alleged failure is unrelated to RPPH's mission.

This Court should dismiss Plaintiffs' claims against NYCHA under the FHA as barred by the two-year statute of limitations. Baez and Gil-Frederick allege the discrete act of submitting ERAP applications in 2021 should have triggered NYCHA's initiation of interim recertification requests, based on loss of income in 2020. Plaintiffs did not commence this action alleging NYCHA failed to adjust their rent until May 2024, more than two years later. Johnson did not submit any ERAP application, but her causes of action accrued no later than June 2021 when she vacated her NYCHA apartment and NYCHA ceased charging her rent.

Plaintiffs also fail to meet the pleading requirements to state FHA and Title VI claims. Plaintiffs allege no facts to infer that race or national origin was a motivating factor in NYCHA's purported failure to initiate income recertifications. Plaintiffs do not allege that NYCHA initiated recertifications on behalf of white tenants but did not do so on behalf of Black and Latino or Hispanic tenants. In addition, Plaintiffs' intentional discrimination claims are belied by Plaintiffs' concession that NYCHA made it easier for all tenants, whom Plaintiffs

acknowledge are nearly 90 percent Black and Hispanic or Latino, to pursue interim recertification requests during the pandemic, resulting in a large increase in interim recertification requests tenants submitted.

NYCHA did not initiate interim recertifications on behalf of Plaintiffs following submission of ERAP applications because the federal regulations only contemplate the processing of interim recertifications pursuant to requests from tenants, which Plaintiffs did not make here.  In addition, as a matter of law, ERAP applications and interim recertifications are distinct separate processes.  While ERAP provided a federal rental assistance grant to address arrears that previously accrued in the pandemic, interim recertifications provide a process to adjust NYCHA tenants' income-based rents going forward based on changes in income.  As Plaintiffs concede, ERAP eligibility did not even require tenants to have lost income during the pandemic, but instead could have been based on unexpected costs or other financial hardship that may not have impacted their income-based rent.  Indeed, Gil-Frederick admits she submitted an ERAP application months *before* she lost income.

Similarly, Plaintiffs fail to adequately plead a disparate impact claim (which is not cognizable under Title VI).  To assert a disparate impact claim under the FHA, Plaintiffs must allege facts from which the Court can plausibly infer that a challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective, and then show that the policy or practice has a disproportionate adverse impact on a protected class.  Plaintiffs fail to identify a NYCHA "policy or practice" that could give rise to a disparate impact claim, and instead they only rely on their individual experiences.  Plaintiffs cite to, but take no issue with, NYCHA's policies and practices as set forth in its Applications and Continued

3

Occupancy Policy ("ACOP"), which provides for flexibility in the means for requesting interim recertifications and appropriate deadlines for processing interim recertifications. Plaintiffs' speculation that, based on the alleged experiences of a few named Plaintiffs, NYCHA frequently fails to comply with its policies and practices does not give rise to a disparate impact claim. Plaintiffs fail to provide statistical data, or any other evidence, suggesting the alleged failure to conduct income recertifications had an adverse effect on NYCHA's Black and Hispanic or Latino tenants compared to NYCHA's white tenants. As courts have previously held, a disparate impact claim against NYCHA cannot be based simply on the large percentage of minority tenants, as Plaintiffs allege in the FAC, because that would transform any challenge to a NYCHA policy or practice into a racial or national origin discrimination claim.

Plaintiffs' disability discrimination claims similarly fail as a matter of law because, to the extent Plaintiffs had disabilities, they do not allege their disabilities were a motivating factor in NYCHA's alleged failure to certify income, and they do not allege a NYCHA policy or practice had a disparate impact on disabled tenants. Plaintiffs also fail to state a claim because they do not allege they requested accommodations and have not explained how their medical conditions, which may not qualify as disabilities, impacted their ability to request income recertifications.

Finally, this Court should dismiss Plaintiffs' state-law negligence claim against NYCHA because: (a) Plaintiffs failed to serve a notice of claim on NYCHA, a prerequisite to a state-law suit under Public Housing Law section 157, prior to commencing this action; (b) Plaintiffs did not timely commence this action within one year and 90 days of when their claims accrued, as required by General Municipal Law section 50-i; (c) any state law claim that NYCHA failed to comply with its administrative obligations must be made in an Article 78 proceeding; and (d)

NYCHA had no duty under the law to initiate income recertification requests for tenants who did not request them but who submitted applications under the discrete ERAP program.

Accordingly, this Court should dismiss the FAC as against NYCHA.

## STATEMENT OF FACTS

### Applicable Statutes and Regulations

The New York State Legislature created NYCHA to provide safe, decent, and sanitary housing for low-income families in the City of New York. *See* N.Y. Pub. Hous. Law §§ 2, 3(2), 156, 401; <u>see also</u> 24 C.F.R. § 960.202(a). In accordance with federal law, NYCHA must establish "satisfactory procedures designed to assure the prompt payment and collection of rents and the prompt processing of evictions in the case of nonpayment of rent[.]" 42 U.S.C. § 1437d(c)(5)(B).

Rent is calculated based on the reported income of a tenant and the household members. <u>See</u> 42 U.S.C. § 1437a. Typically, the tenant's rent is 30 percent of the household's adjusted income. *See* 24 C.F.R. § 5.628. Federal regulations require NYCHA to conduct annual re-examinations of a tenant's income and family composition and adjust the rent accordingly. *See* 24 C.F.R. § 960.257(a)(1). A tenant may also "request an interim reexamination of family income or composition because of any changes since the last determination." 24 C.F.R. § 960.257(b)(1). If a tenant disagrees with NYCHA's calculation of the rent, the tenant may request an administrative grievance to challenge that rent calculation. *See* 24 C.F.R. § 966.50.

In April 2021, New York State enacted the COVID-19 Emergency Rental Assistance Program of 2021, referred to as ERAP, which authorized OTDA to administer payments for rental and utility arrears that accrued on or after March 13, 2020. Among other eligibility

requirements, applicants needed to show they "qualified for unemployment or experienced a reduction in household income, incurred significant costs, or experienced other financial hardship due, directly or indirectly, to the COVID-19 outbreak."  FAC ¶ 49.

**Interim Recertification Procedures During the COVID-19 Pandemic**

During the COVID-19 pandemic, NYCHA made it easier for tenants to request interim recertifications and receive corresponding reductions in rent.  *See* FAC ¶¶ 81-83 (citing NYCHA's COVID-19 FAQ's, available at https://www.nyc.gov/site/nycha/about/covid-19-FAQ.page).  NYCHA suspended the prior requirement that tenants wait two months after a change in income or composition before applying for an interim recertification.  *See id.*  Tenants could request an interim recertification through NYCHA's Self-Service portal, by calling the Customer Contact Center, or contacting their Property Management Office.  *See id.*  Pursuant to the CARES Act, NYCHA also permitted tenants to self-certify their income reduction, meaning they did not need to provide verification documents.  *See* HUD PIH 2020-13(HA) REV-1, issued July 2, 2020; HUD PIH 2021-14 (HA), issued May 4, 2021.  After NYCHA streamlined the process, the number of interim recertification requests NYCHA received due to reductions in income during the COVID-19 pandemic far exceeded the number received prior to the pandemic. *See* FAC ¶¶ 85-86.

**This Action**

Plaintiffs filed their initial Complaint on April 30, 2024.  Plaintiffs concurrently filed a motion for a preliminary injunction restraining NYCHA from pursuing nonpayment proceedings and rent collection proceedings, and NYCHA opposed Plaintiffs' motion.  This Court denied Plaintiffs' motion following oral argument on May 30, 2024.  *See* Transcript (ECF No. 33).  On

July 2, 2023, this Court authorized Plaintiffs to file an amended complaint and authorized

NYCHA to move to dismiss the amended complaint.  In the FAC, Baez alleges she lost income

in 2020 and applied for ERAP assistance in August 2021.  *See* FAC ¶¶ 129-33.  She admits she

vacated her NYCHA apartment on an unidentified date.  *See id.* at ¶¶ 127-28.  Gil-Frederick

maintains she began losing income in November 2021 and applied for ERAP assistance in June

2021 (before her loss of income).  *See id.* at ¶¶ 141, 143-44.  Johnson alleges she lost income in

April 2020 and vacated her NYCHA apartment in June 2021, based on issues unrelated to her

rental payments, without applying for ERAP.  *See id.* at ¶¶ 156, 160-61.

<u>**ARGUMENT**</u>

<u>**LEGAL STANDARD ON A MOTION TO DISMISS**</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead facts

sufficient to "state a claim to relief that is plausible on its face."  *See Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  For a claim to be plausible, a complaint must contain "enough fact to

raise a reasonable expectation that discovery will reveal evidence" to support it.  *See id.* at 556.

A well-pleaded complaint must therefore allege facts that reasonably lead the court to infer that

the defendant is liable for the alleged harm beyond a "mere possibility."  *See Ashcroft v. Iqbal*,

556 U.S. 662, 678–79 (2009).  In doing so, a plaintiff must assert more than a cause of action or

conclusory allegations; "naked assertion[s]" without "factual enhancement" are insufficient to

state a viable claim.  *See id.* at 678 (quoting *Twombly* at 557); *see also Reddington v. Staten

Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007).  A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.  *See Iqbal*, 556 U.S. at 677–80.  A pleading that

7

offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  *See id.*

Although Plaintiffs commenced this action as a putative class action, this Court may only consider the claims of the named Plaintiffs at this juncture because the Court has not certified the proposed class.  *See Martin v. New Am. Cinema Grp., Inc.*, Case No. 22-cv-05982 (JLR), 2023 U.S. Dist. LEXIS 26014, at *20-21 (SDNY Feb. 15, 2023).

### POINT I

### PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION AGAINST NYCHA BASED ON DEPRIORITIZATION OF NYCHA RESIDENTS UNDER ERAP

In Plaintiffs' first three causes of action and seventh cause of action, Plaintiffs seek relief under the FHA, Title VI, and New York State Human Rights Law based on OTDA's alleged decision to deprioritize applications for ERAP assistance submitted by NYCHA residents.  *See* FAC ¶¶ 183-99, 218-23.  Although Plaintiffs reference alleged policies of OTDA and do not suggest NYCHA was involved in a decision to deprioritize its own residents, Plaintiffs vaguely refer to "Defendants" instead of just Defendants OTDA and Guinn.  *See* FAC ¶¶ 188, 198. Inasmuch as Plaintiffs acknowledge that, as the landlord, NYCHA receives ERAP funds approved by OTDA on behalf of its tenants (*see* FAC ¶ 48), it would be nonsensical for NYCHA to have potentially deprived itself of needed funding by playing any role in deprioritization of its own tenants.  Because Plaintiffs fail to allege why NYCHA should potentially be held liable for New York State's alleged determination to deprioritize NYCHA residents under the ERAP program, this Court should dismiss the first, second, third, and seventh causes of action to the extent those claims are alleged against NYCHA.

## POINT II

### RPPH LACKS STANDING TO ASSERT
### ITS CLAIMS AGAINST NYCHA

For an organization to have standing where there is no direct injury, the organization must show, among other things, that "the interests it seeks to protect are germane to the organization's purpose." *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68, 75 (2021) (*quoting Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). RPPH fails to satisfy this requirement as to its claims against NYCHA. RPPH's mission is "to preserve public housing by advocating for adequate funding, improving quality of services, and increasing residents' decision-making authority." FAC ¶ 178. The FAC specifies that RPPH has fought against decisions to convert public housing developments to project-based Section 8 through the NYC Public Housing Preservation Trust and Permanent Affordability Commitment Together ("PACT"). *Id.* at ¶ 179. Although the FAC contends NYCHA's alleged failure to recertify the income of its members has caused them hardship and impacted the ability of RPPH's members to strenuously advocate for its goals, this purported impact on its members does not render claims relating to recertification of income germane to RPPH's purpose of preserving public housing and preventing conversion to the project-based Section 8 program. Plaintiffs' argument would mean that if, for example, a member of RPPH lost property due to an apartment leak, RPPH would have standing to seek relief because the property damage impacted a member and therefore impacted its advocacy. Accordingly, this Court should dismiss Plaintiffs' fourth, fifth, and sixth causes of action to the extent they are asserted on behalf of RPPH.

POINT III

## PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION UNDER THE FHA AND TITLE VI

In their fourth and fifth causes of action, Plaintiffs allege NYCHA discriminated against them on account of their race, national origin, and disability, both intentionally and by disparate impact, in violation of the FHA and Title VI.  *See* FAC ¶¶ 200-12.  Plaintiffs fail to adequately plead these causes of action.

**A.      Plaintiffs' Claims Under the FHA Are Barred by the Statute of Limitations**

Under the FHA, "[a]n aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice[.]"  42 U.S.C. § 3613(a)(1)(A); *see also Logan v. Matveevskii*, 57 F. Supp. 3d 234, 267 (S.D.N.Y. 2014).

Plaintiffs' purported causes of action accrued more than two years before their commencement of this action in May 2024.  Baez alleges she lost income in 2020 and NYCHA should have initiated an interim recertification on her behalf based on the ERAP application she submitted in August 2021 as well as her email sent that same month informing NYCHA of her ERAP application.  *See* FAC ¶¶ 129-33.  Gil-Frederick contends she lost income in November 2021 and NYCHA should have initiated an interim recertification based on the ERAP application she submitted in June 2021 (prior to her loss of income) and her email informing NYCHA of the ERAP application in July 2021.  *See id.* at ¶¶ 141-44.  Gil-Frederick also contends she submitted annual recertification forms to NYCHA in December 2020 and correspondence about her annual recertification in January 2021, but NYCHA did not properly

10

process her recertification. *See id.* at ¶ 146. Johnson contends she lost income in or around April 2020, she did not submit an ERAP application, and she vacated her NYCHA apartment due to conditions in her apartment in June 2021. *See id.* at ¶¶ 154-63. In each of these cases, despite alleging that NYCHA did not initiate interim recertifications or adjust their rent in 2020 or 2021, as they now contend NYCHA was required to do, and being purportedly aggrieved at that time, Plaintiffs took no steps to pursue their claims until filing this action in May 2024.

In reply to NYCHA's opposition to their motion for a preliminary injunction, Plaintiffs argued their FHA claims were timely based on a continuing violation theory. Courts only apply the continuing violation doctrine "'where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.'" *See Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 503 (S.D.N.Y. 2015) (internal citations omitted). "The courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Marinelli v. Chao*, 222 F. Supp. 2d 402, 413 (S.D.N.Y. 2002) (internal citations omitted); *see also Higgins v. 120 Riverside Blvd. at Trump Place Condominium*, No. 21-CV-4203 (LJL), 2022 WL 3920044, at *13 (S.D.N.Y. Aug. 31, 2022); *Stone v. 23rd Chelsea Assocs.*, No. 18-CV-3869 (VSB), 2020 WL 1503671, at *6 (S.D.N.Y. Mar. 30, 2020).[1]

---

[1]     The continuing violation doctrine is "traditionally applied to hostile work environment claims." *Whalen v. CSR TKR, LLC*, Case No. 11-cv-1834 (VB), 2022 WL 3920044, at *4 (S.D.N.Y. Dec. 28, 2011); *see, e.g.*, *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994); *Kimmel v. State of New York,* 49 A.D.3d 1210, 1211 (4th Dep't 2008). Unlike the claims Plaintiffs raise here, hostile work environment claims constitute "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Kimmel*, 49 A.D.3d at 1211.

No such compelling circumstances exist here.  Johnson cannot claim a continuing violation inasmuch as she vacated her NYCHA apartment in June 2021 and, at that point, NYCHA stopped charging her rent.  Baez and Gil-Frederick both contend their discrete acts of informing NYCHA that they submitted ERAP applications triggered NYCHA's obligation to initiate interim recertifications and adjust their rent on their behalf.  Baez and Gil-Frederick do not allege they were somehow confused as to whether NYCHA had initiated an interim change inasmuch as any rent reduction would have been reflected on their rent bills.  The continuing-violation doctrine "does not apply where a plaintiff was on notice of what [he] believed was discrimination but 'failed to act in preservation of [his] rights in spite of [his] knowledge.'" *273 Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*, 330 F. Supp. 3d 778, 792 (E.D.N.Y. 2018) (citation omitted).  Here, Plaintiffs were on notice of their purported claims in 2021, at the latest, yet they sat on their rights and continued to allow their arrears to accrue without commencing litigation until May 2024, more than two years later.

To the extent Baez or Johnson suggests their claims did not accrue until NYCHA commenced rent collection proceedings against them in May 2023 (*see* FAC ¶¶ 135, 162), this court should reject that argument.[2]  To determine when a discrimination claim accrues, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful."  *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *see Bd. of Educ. of North Rockland Cent. Sch. D. v. C.M. on behalf of P.G.*, 744 F. App'x. 7, 9 (2d Cir. 2018) (Rehabilitation Act claim untimely where school district's decision denying residential

---

[2]    Gil-Frederick is still a NYCHA tenant and, to date, NYCHA has not commenced a nonpayment proceeding against her in Housing Court.

placement was alleged discriminatory act, but events occurring after accrual date were "alleged manifestations of the consequences of that decision"); *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) ("We have made it clear that a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act"). Plaintiffs cannot revive their untimely claims under the FHA by waiting until NYCHA commenced litigation against them to assert their claims that accrued years earlier.

**B.    Plaintiffs Fail to State a Cause of Action
       Against NYCHA for Intentional Discrimination
       on the Basis of Race or National Origin**

For a disparate treatment claim under the FHA or Title VI, a plaintiff must allege "facts that support a plausible claim that the plaintiff was a member of a protected class, suffered relevant adverse treatment, and can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (internal quotation marks omitted); *see L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 400 (S.D.N.Y. 2013) ("[F]or disparate treatment cases, '[t]o establish a prima facie case of discrimination under the FHA [ ], the plaintiffs must present evidence that animus against the protected group was a significant factor' in the position taken by the defendant.") (citation omitted).  As discussed above, Plaintiffs must allege more than a "mere possibility" of discrimination and may not rely solely on conclusory statements without factual enhancement sufficient to allow the court to draw a reasonable inference of discrimination.  *See Iqbal*, 556 U.S. at 678–80; *Reddington*, 511 F.3d at 131.  Here, Plaintiffs fail to satisfy this standard.

Plaintiffs do not allege or suggest that NYCHA initiated annual or interim recertifications on behalf of white tenants but refused to initiate them on behalf of tenants who are Black and

13

Hispanic or Latino.  *See Jackson v. Cty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011)

(dismissal appropriate where "bald assertions of discrimination and retaliation" were

unsupported by examples of similarly situated individuals being treated differently); *Smith v.

New York City Hous. Auth.*, 410 F. App'x 404, 406 (2d Cir. 2011) ("Because Smith has not

alleged that discriminatory animus was a factor, much less a 'significant factor,' in NYCHA's

alleged failure to maintain the apartment building and Smith's apartment, she failed to state a

claim for intentional discrimination."); *Logan v. Matveeskii*, 175 F. Supp. 3d 209, 226–27

(S.D.N.Y. 2016) (dismissing FHA claim on the ground that no inference of discrimination could

be drawn from conclusory allegations of "discrimination against a black family").

    Plaintiffs' discrimination claims also are belied by their admissions that NYCHA made it

easier for tenants, whom Plaintiffs acknowledge are nearly 90 percent Black and Hispanic or

Latino and only 4 percent white, to pursue interim recertification requests during the pandemic,

resulting in a large increase in requests submitted to NYCHA.  *See* FAC ¶¶ 70, 81-86.  Among

other things, NYCHA suspended the two-month waiting period, designed to reduce

administrative burden and ensure the reduction in income or loss of employment remained in

place, before tenants could apply for interim recertifications.  *See* FAC ¶ 81.  Consistent with a

HUD waiver under the CARES Act, NYCHA streamlined processing of interim recertification

requests by allowing tenants to self-certify their income reductions without requiring them to

verify that income change.  *See* HUD PIH 2020-13(HA) REV-1, issued July 2, 2020; HUD PIH

2021-14 (HA).  These measures, designed to encourage *all* tenants, regardless of race or national

origin, to submit interim recertification requests are inconsistent with Plaintiffs' claim NYCHA

deliberately discriminated against tenants by not recertifying their income.

Plaintiffs give the Court no basis for inferring NYCHA had a discriminatory motive for not initiating interim recertifications on their behalf, especially when NYCHA had no obligation to do so.  Plaintiffs do not allege they made interim requests for NYCHA to recertify their income and adjust their rent, but instead contend NYCHA violated its obligations to initiate interims because "[k]nowledge of [Plaintiffs'] ERAP application immediately put NYCHA on notice of [their] rent hardship and triggered NYCHA's duty to conduct an Interim Recertification based on [their] actual income."  FAC ¶¶ 133 (allegation relating to Baez); *see id.* at ¶ 144 ("Knowledge of Ms. Gil-Fredericks' financial hardship by way of her [ERAP] application . . . triggered NYCHA's duty to conduct an Interim Recertification"); *see also* FAC ¶¶ 154-63 (not alleging Johnson informed NYCHA of a loss of income).  Under federal regulations, however, only requests from tenants trigger the interim recertification process.  *See* 24 C.F.R. § 960.257(b)(1) ("A family may request an interim recertification of family income or composition because of any changes since the last determination"); *see also* FAC ¶¶ 58-59 (referencing requirement to conduct interim recertifications "as requested by [public housing] households").

The FAC also makes clear that the ERAP application is completely unrelated to the interim recertification process and, as a matter of law, submission of ERAP applications could not have given rise to the obligation to initiate interim recertification requests.  ERAP applications and interim change requests have different legal frameworks, serve entirely different functions, require different information, are processed by different legal entities, and achieve different outcomes.  Unlike interim recertifications, which deal with current income changes and rental charges moving forward, are processed by the development Property Management offices, and require tenants to provide their updated income information so that staff can adjust the

15

income-based rent, ERAP applications were submitted to OTDA and were intended to address prior arrears that accumulated based on qualifying conditions during the defined coverage period authorized by ERAP. *Compare* FAC ¶¶ 46-48 (describing the purpose and process of ERAP applications) *with id.* at ¶¶ 64-65 (describing interim recertifications). Moreover, to be eligible for ERAP assistance, tenants did not need to have lost income but instead could have been eligible by "incur[ring] significant costs," or "other financial hardship," which would not have impacted the rent. *Id.* at ¶ 49. NYCHA tenants submitting ERAP applications did not provide to NYCHA the actual income information, the timing of any income reduction, or the household member experiencing the income change, all of which NYCHA staff would have needed to process an interim recertification.

The distinction between these two unrelated processes is made clear by the allegations of Gil-Frederick, who alleges her June 2021 ERAP application and July 2021 email concerning that application triggered NYCHA's obligation to conduct an interim recertification, but she does not maintain she lost any income that could have resulted in a rent reduction until November 2021. *See* FAC ¶¶ 141, 143. Accordingly, for each of these reasons, Plaintiffs failed to adequately plead a disparate treatment claim under the FHA or Title VI.

**C.    Plaintiffs Fail to State a Cause of Action Against NYCHA for Disparate Impact Discrimination <u>Based on Race or National Origin</u>**

Plaintiffs purport to bring disparate impact claims under both the FHA and Title VI. *See* FAC ¶¶ 200-12. Plaintiffs, however, may not assert a disparate impact claim under Title VI. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (observing that *Alexander v. Sandoval*, 532 U.S. 275 (2001), "held that private parties may not invoke Title VI regulations to

obtain redress for disparate-impact discrimination because Title VI itself prohibits only intentional discrimination").[3]  Because, as discussed above, Plaintiffs' FHA claims are barred by the statute of limitations, this Court need not consider whether Plaintiffs have adequately pled their disparate impact claim.

If this Court nevertheless considers whether Plaintiffs have adequately pled a disparate impact claim under the FHA, it should conclude they have not done so.  At the pleading stage, a plaintiff must allege facts from which the Court can plausibly infer that (1) "the challenged policy or practice is arbitrary, artificial, and unnecessary to achieve a valid interest or legitimate objective such as a practical business, profit, policy consideration, or requirement of law;" (2) "the challenged policy or practice has a disproportionately adverse effect on members of a protected class;" (3) "there is a robust causal link between the challenged policy or practice and the adverse effect on members of a protected class, meaning that the specific policy or practice is the direct cause of the discriminatory effect;" (4) "the alleged disparity caused by the policy or practice is significant; and" (5) "there is a direct relation between the injury asserted and the injurious conduct alleged."  *See Moody v. Related Companies LP*, 620 F. Supp. 3d 51, 57 (S.D.N.Y. 2022).  Plaintiffs have failed to adequately plead several of these elements necessary for this Court to draw an inference of disparate-impact discrimination.

---

[3]       In their motion for a preliminary injunction (*see* ECF No. 7), Plaintiffs cited *New York Urban League v. New York*, 71 F.3d 1031, 1036 (2d Cir. 1995), for the proposition agencies can promulgate regulations incorporating disparate impact discrimination under Title VI, and Plaintiffs suggested HUD promulgated such a regulation in 24 C.F.R. section 100.500.  *New York Urban League*, however, predates the Supreme Court's decisions in *Jackson* and *Alexander*, and 24 C.F.R. section 100.500 explicitly applies to claims under the FHA, not Title VI.  *See* 24 C.F.R. section 100.500 ("[l]iability may be established under the Fair Housing Act based on a practice's discriminatory effect").

First, Plaintiffs provide no basis for this Court to infer that NYCHA has a policy or practice of failing to process income recertifications.  Indeed, as discussed above, Plaintiffs concede that NYCHA made it easier for  tenants to pursue interim recertification requests, resulting in a large increase in requests during the pandemic.  *See* FAC ¶¶ 81-86.  Plaintiffs repeatedly cite to NYCHA's recertification policies, as set forth in NYCHA's ACOP.  *See* FAC ¶¶ 62-65 & n. 34-41.  NYCHA's ACOP states, among other things: (1) residents may initiate an interim recertification through the self-service portal or by requesting a paper packet and must submit supporting documentation; (2) NYCHA must process an interim change within 30 days; and (3) while the interim change request is pending, NYCHA will not pursue a nonpayment proceeding or administrative chronic rent delinquency charges.  *See* ACOP at pp. 105-07, available at https://www.nyc.gov/assets/nycha/downloads/pdf/admissions-and-continued-occupancy-policy-acop-final.pdf.[4]  Plaintiffs cite to the ACOP but take no issue with any of these policies or practices relating to interim recertifications.

Plaintiffs' individual claims that NYCHA failed to comply with its policies and practices as applied to them, and their speculation "[u]pon information and belief" that NYCHA failed to comply with its policies and practices across many households are not sufficient to state a disparate impact claim under the FHA.  *See* FAC ¶¶ 85-89; *Jones v. Volunteers of Am. Greater N.Y.*, Case No. 20-cv-5581 (MKV), 2022 US. Dist. LEXIS 45103, at *25-26 (S.D.N.Y. Mar. 14, 2022) (complaint "relates to [plaintiff's] individual experiences with the Defendants – and does

---

[4]    For the Court's convenience, NYCHA is attaching the ACOP as Exhibit 1 to the Declaration of Seth E. Kramer in Support of NYCHA's Motion to Dismiss.  The Court is entitled to consider documents cited in the pleading subject to a motion to dismiss as well as government publications, like the ACOP.  *See, e.g.*, *Rahman* v. *Schriro*, 22 F. Supp. 3d 305, 311 (S.D.N.Y. 2014); *Bebry* v. *ALJAC LLC*, 954 F. Supp. 2d 173, 177 (E.D.N.Y. 2013).

not plead any facts about how his treatment was indicative of systemic adverse impact"); *Town & Country Adult Living, Inc. v. Village/Town of Mt. Kisco*, Case No. 17-cv-8586 (CS), 2019 U.S. Dist. LEXIS 50676, at *45 (S.D.N.Y. Mar. 26, 2019) (Plaintiffs' complaint here is not about a facially neutral policy or practice, but about specific acts that Defendants took that relate only to Plaintiffs"); *Frederick v. Wells Fargo Home Mortg.*, Case No. 13-cv-7364 (DLI) (LB), 2015 U.S. Dist. LEXIS 41328, at *16 (E.D.N.Y. Mar. 30, 2015) ("Plaintiffs' failure to provide factual allegations of a specific or particular practice used by Defendants requires dismissal of Plaintiffs' FHA . . . discrimination claims"), *aff'd*, 649 F. App'x. 29 (2d Cir. 2016).

Second, as a matter of law, NYCHA's alleged failure to initiate interim recertifications on Plaintiffs' behalf based on their ERAP applications was not arbitrary or artificial but instead, as discussed above, is consistent with the different purposes, scope, and procedures of those two distinct processes.  In *Fair Hous. in Huntington Comm. v. Town of Huntington*, Case No. 02-cv-2787 (DRH) (ARL), 2005 U.S. Dist. LEXIS 4552 (E.D.N.Y. Mar. 23, 2005), the court found the plaintiffs failed to state a claim for violation of the FHA under a disparate impact theory because, although the plaintiffs alleged the town's refusal to approve larger affordable housing units disparately impacted minority families, the town owed no duty to provide low income housing. *See id.* at *21-22.  Similarly, here, Plaintiffs' disparate income claim premised on NYCHA's alleged failure to initiate interim recertification requests following ERAP applications lacks merit as a matter of law because, absent a request from tenants to process an interim recertification, NYCHA has no underlying duty.

Third, Plaintiffs fail to compare the impact of any purported policy or practice on Black and Hispanic or Latino tenants with other groups of NYCHA tenants.  Plaintiffs exclusively rely

on the large percentage of NYCHA residents who are Black and Hispanic or Latino compared to the overall population (*see* FAC ¶ 124), but given NYCHA can only process income recertifications for NYCHA tenants, Plaintiffs' disparate impact claim needs to compare the impact on Black and Hispanic or Latino NYCHA tenants with the impact on other NYCHA tenants.  Plaintiffs, however, have failed to raise any claims about such a comparison.  *See Katz v. New York City Hous. Pres. & Dev.*, Case No. 21-cv-2933 (JPC), 2022 U.S. Dist. LEXIS 140876, at *16 (S.D.N.Y. Aug. 8, 2022) (dismissing case where plaintiffs relied on nationwide averages to challenge occupancy limits in affordable housing because plaintiffs "never compare Orthodox Jews applying for New York City affordable housing to similarly situated individuals. . . . [Plaintiffs] need to compare their protected group to similarly situated individuals: those applying for New York City public housing"); *Frederick*, 649 F. App'x. at 30 (dismissing claim because plaintiffs "failed to allege any statistical evidence specifically tied to the defendants or the group that the [plaintiffs] claim suffers from discrimination").

Plaintiffs' reliance on the general percentage of minorities within NYCHA housing would turn any challenge to a NYCHA policy or practice into a claim for racial and national origin discrimination.  In *Williams v. New York City Hous. Auth.*, 879 F. Supp. 2d 328 (E.D.N.Y. 2012), where plaintiff alleged NYCHA discriminated in commencing holdover proceedings, Judge Weinstein held a jury "would need to know the total number of occupants against whom holdover proceedings *could* have been initiated," and if "virtually all of the residents of the relevant apartment complex are African American, then the plaintiff would be hard pressed to argue, without more, that the Authority's initiation of holdover proceedings against occupants of that apartment complex had a disparate impact on African Americans relative to occupants of

other racial groups." *Id.* at 338 (emphasis in original); *see also Davis v. City of New York*, 959 F. Supp. 2d 324, 369-70 (S.D.N.Y. 2013) (granting NYCHA summary judgment on intentional race discrimination claims, and holding, "According to plaintiffs' logic, nearly any shortcoming by NYCHA would provide evidence of racial bias — because NYCHA knows that nine out of ten of the people who will be affected by the shortcoming are African Americans and Latinos.").

To the extent Plaintiffs maintain they need discovery to gather support for their claims, Plaintiffs misunderstand the pleading requirements. In *Frederick*, the court specifically rejected this argument, holding: "Plaintiffs state that they seek discovery because the detailed information they need to show disparate impact is within the possession and control of the Corporate Defendants. . . . Plaintiffs cannot state a claim where they rely on the vague hope that discovery may show facts on which the claim could be based." *Frederick*, 2015 U.S. Dist. LEXIS 41328, at *18-19. Accordingly, this Court should dismiss Plaintiffs' fourth and fifth causes of action alleging discrimination under the FHA and Title VI on the bases of race or national origin.

**D.    Plaintiffs Fail to State a Cause of Action for**
**Disability Discrimination or Failure to Accommodate**

For the first time in the FAC, Plaintiffs allege NYCHA discriminated against Baez and Gil-Frederick based on their alleged disabilities. *See* FAC ¶¶ 4-5, 120, 205. Johnson does not allege she suffered from a disability. *See id.* ¶¶ 154-63. "To establish [disability] discrimination under either the FHAA or the ADA, plaintiffs have three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).[5]

---

[5]    Recognizing that disability is not a protected class under Title VI, Plaintiffs do not raise disability in their fifth cause of action under Title VI. *See* FAC ¶¶ 208-12.

Even if the health conditions alleged by Baez and Gil-Frederick qualified as disabilities under federal law, Plaintiffs fail to state a cause of action under any of these theories.  For the same reasons discussed above that Plaintiffs fail to satisfy the pleading standard that NYCHA discriminated on the basis of race and national origin, their claims of intentional and disparate impact discrimination on account of their alleged disabilities fail.  Plaintiffs provide no basis to suggest NYCHA intentionally failed to recertify their income because they are disabled and have not identified a NYCHA policy that adversely impacts the ability of disabled tenants to recertify.

To the extent Plaintiffs assert a reasonable accommodation claim, this claim also fails as a matter of law.  To prevail on a reasonable accommodation claim, a plaintiff must demonstrate that "(1) [s]he suffers from a handicap as defined by the FHAA; (2) the defendant knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap 'may be necessary' to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendants refused to make such accommodation."  *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 336 (E.D.N.Y. 2012) (citations omitted).

Here, Plaintiffs do not allege an accommodation was necessary to afford them equal opportunity to use their dwelling.  Instead, it is clear their purported disabilities had no impact on their ability to recertify their income.  As discussed above, NYCHA does not require tenants to submit interim recertification requests or supporting documents in person at NYCHA offices, but instead permits tenants to utilize the self-service portal to make requests and submit documents. *See* Kramer Decl. Exh. 1 (ACOP) at 105-07.  Baez admits despite her illness, she was able to submit an ERAP application and email NYCHA staff.  *See* FAC ¶¶ 131-33.  Gil-Frederick similarly maintains she was able to apply for ERAP, emailed NYCHA staff, and submitted her

annual recertification forms.  *See id.* ¶¶ 141-46.

Plaintiffs also do not allege NYCHA refused an accommodation inasmuch as they do not suggest they ever requested an accommodation.  *See DeMar v. Car-Freshner Corp.*, 49 F. Supp. 2d 84, 95-96 (N.D.N.Y. 1999) ("[I]f the employee fails to request an accommodation, the employer cannot be held liable for failing to provide one").  If Plaintiffs needed assistance with submitting forms or documents, they could have requested a reasonable accommodation, and NYCHA would have responded as required under the law.  Accordingly, Plaintiffs fail to state a cause of action for disability discrimination.

**POINT IV**

**PLAINTIFFS FAIL TO STATE
A CAUSE OF ACTION FOR NEGLIGENCE**

Plaintiffs' sixth cause of action ostensibly alleges a state-law claim against NYCHA for negligently failing to initiate income recertifications, resulting in income-based rent that was too high.  *See* FAC ¶¶ 213-17.  Plaintiffs' state-law negligence claim is barred for four reasons.

First, Plaintiffs failed to file a notice of claim with NYCHA, and allege they did so in the FAC, as required under state law.  Section 157(1) of the Public Housing Law ("PHL") provides that "in every action or special proceeding, for any cause whatsoever," against a public housing authority, other than a claim arising out of a condemnation proceeding, the complaint contain an allegation that the plaintiff has first presented its claim to NYCHA, that at least 30 days have elapsed since that time, and that NYCHA has neglected or refused to pay the claim.  *See* Pub. Hous. Law § 157(1).  Compliance with the notice and pleading requirements of PHL Section 157(1) is a prerequisite to filing suit against NYCHA.  *See Intercontinental Constr. Contr., Inc. v. New York City Hous. Auth.*, 173 A.D.3d 453, 454 (1st Dep't 2019) ("Petitioner failed to

23

submit a notice of claim before commencing this proceeding, as required by Public Housing Law § 157(1)[.]"); *J & E Industries of Ossining, Inc. v. Peekskill Hous. Auth.*, 128 A.D.3d 638, 639-40 (2d Dep't 2015) (dismissing complaint seeking damages for breach of contract due to failure to comply with PHL section 157); *Kovachevich v. New York City Hous. Auth.*, 295 A.D.2d 255, 255 (1st Dep't 2002) (upholding dismissal of complaint where plaintiff did not comply with the notice and pleading requirements of PHL Section 157(1)).

Second, Plaintiffs' negligence claim against NYCHA is time-barred.  New York General Municipal Law section 50-i provides that an action against a public corporation for negligence "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based."  This requirement applies to tort claims for negligence even where the claim does not allege physical injury or property damage.  *See Hannibal General Contractors, Inc. v. St. Matthew and St. Timothy's Housing Corp.*, 83 Misc. 2d 53 (Sup. Ct. N.Y. Co. 1975) (applying GML 50-i to claim for wrongful interference with contractual relations).  As with Plaintiffs' FHA claims, Plaintiffs' negligence claims accrued in 2020 or 2021 when they allege NYCHA should have initiated income recertifications on their behalf and adjusted their rent, and their negligence claims are similarly time-barred.

Third, any state law claim that NYCHA failed to comply with its administrative obligation to initiate or process income recertifications must be made in an Article 78 proceeding, not a plenary action seeking damages for negligence.  An Article 78 proceeding is the sole vehicle to seek to compel an agency to comply with its obligations to perform an administrative duty required by law.  *See* CPLR § 7803(3); *City of New York v. State of New York*, 46 A.D.3d 1168, 1169 (3d Dep't 2007) (while the claim "is couched only in terms that

seek monetary damages, the real challenge is to the Department's administrative

determinations," and "review of such determinations are properly brought only in Supreme Court

in a CPLR article 78 proceeding"); *Von Essen v. New York City Civil Service Comm'n,* 3 A.D.3d

115, 125 (1st Dep't 2003) ("sole and exclusive remedy available for a firefighter so disciplined is

a proceeding pursuant to CPLR article 78"); *Kahn v. City of New York/Section 8*, 36 Misc. 3d.

143(A) (App. Term 1st Dep't 2012) ("The underlying administrative determination rendered by

[NYCHA] in due course was reviewable only by way of a CPLR article 78 proceeding.").

Fourth, as discussed above and as a matter of law, NYCHA did not owe Plaintiffs a duty

to initiate interim recertification requests on their behalf based on submission of unrelated ERAP

applications. *See* Section III(B), above; *Ferreira v. City of Binghamton*, 38 N.Y.3d 298, 302

(2022) (identifying a duty owed by the defendant to the plaintiff as an element for a negligence

claim). Accordingly, this Court should dismiss Plaintiffs' sixth cause of action.

## CONCLUSION

Defendant NYCHA respectfully requests this Court dismiss the FAC and grant it such

other and further relief as the Court deems just and proper.

Dated: New York, NY
      August 16, 2024

DAVID ROHDE
EVP for Legal Affairs and General Counsel
New York City Housing Authority
Attorneys for Defendant NYCHA
90 Church Street, 11th Floor
New York, NY 10007
(212) 776-5206

By:    _Seth E. Kramer_

      Seth E. Kramer
      Seth.Kramer@nycha.nyc.gov