UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WANDA BAEZ, SIIDE GIL-
FREDERICK, DANIELLE JOHNSON,
*and* RESIDENTS TO PRESERVE
PUBLIC HOUSING,

                                    Plaintiff,


                    – *against* –


NEW YORK STATE OFFICE OF
TEMPORARY AND DISABILITY
ASSISTANCE, *and* NEW YORK CITY
HOUSING AUTHORITY,

                                    Defendants.

**OPINION & ORDER**

24-cv-3282 (ER)

R<small>AMOS</small>, U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>:

        Wanda Baez, Siide Gil-Frederick, Danielle Johnson, and Residents to Preserve

Public Housing ("RPPH") (collectively, "Plaintiffs") bring this putative class action

against the New York State Office of Temporary and Disability Assistance ("OTDA") and

the New York City Housing Authority ("NYCHA") (collectively, the "Defendants").

Plaintiffs allege that Barbara C. Guinn, in her individual capacity as OTDA

commissioner, OTDA, and NYCHA discriminated against Black and Hispanic or Latino

public subsidized housing tenants in violation of the Fair Housing Act ("FHA"), Title VI

of the Civil Rights Act of 1964, and New York State Human Rights Laws.  Doc. 40.

Before the Court is the Defendants' motions to dismiss the suit in its entirety.  Docs. 51

and 55.  For the reasons set forth below, the motion is GRANTED.

I.    **BACKGROUND**

The following facts are based on the allegations in the first amended complaint ("FAC"), which the Court accepts as true for the purposes of this instant motion.[1] *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

During the COVID-19 pandemic, Congress passed the Consolidated Appropriations Act, 2021, which provided eligible states with federal funding to implement the Emergency Rental Assistance Program ("ERAP").  Doc. 40. ¶¶ 7, 36.  This program was intended to help renters experiencing financial hardship due to the pandemic manage rental costs.  *Id*. ¶ 9.  Eligible renters would receive "up to twelve months of rental and/or utility assistance arrears and three months of prospective rental assistance." *Id*. ¶ 48.

Under the Consolidated Appropriations Act, the state of New York received federal funding to be used toward "rental arrears, utilities, home energy arrears, and other housing related expenses incurred due to the COVID-19 outbreak."  *Id*. ¶ 37.  Using these funds, the state of New York implemented the ERAP and made OTDA responsible for approving ERAP applications and administering funds.  *Id*. ¶ 9.  OTDA is a pre-existing state agency responsible for providing financial assistance and support to eligible families and individuals.  *Id*. ¶ 24.  The commissioner of the OTDA, at the time of the pandemic, was Barbara C. Guinn.  *Id*. ¶ 25.

Each state had the flexibility to structure and design their ERAP.  *Id*. ¶ 44.  Guinn, as commissioner of OTDA, established standards for determining eligibility for the ERAP in New York.  *Id*. ¶ 49.  OTDA required that to be eligible for benefits, one must be a "tenant or occupant obligated to pay rent in their primary residence in the state of New York … provided however that occupants of federal or state funded subsidized

---

[1] Plaintiffs attached a list of NYCHA consumer debt claims on file in the New York State Supreme Court and NYCHA civil actions on file in the New York County Civil Court to the initial Complaint.  Doc. 1. However, the FAC does not include the attachments.  Doc. 40.

public housing authorities or other federal or state funded subsidized housing that limits the household's share of the rent to a set percentage of income shall only be eligible to the extent that funds are remaining after serving all other eligible populations." *Id*. ¶ 49. In other words, individuals and households that were already receiving federal or state housing assistance would be deprioritized.

In an effort to provide as many households as possible with ERAP funds, OTDA partnered with NYCHA. *Id*. ¶ 110. NYCHA is the largest public housing authority in North America, receives federal funding, and is subject to federal regulation. *Id*. ¶ 6. Together, OTDA and NYCHA established "a process that provided up to 12 months of financial relief to households that accumulated rent arrears at the height of the pandemic." *Id*. ¶ 110, n. 99.

In addition, Public Housing Authorities ("PHA"), funded by the U.S. Department of Housing and Urban Development ("HUD"), such as NYCHA, are expected to calculate the portion of rent a public and subsidized tenant must pay. *Id*. ¶¶ 52, 55. If there are any financial changes within a household, PHAs are expected to conduct an interim recertification within a reasonable period of time, that being no longer than 30 days after changes in income are reported. *Id*. ¶ 58. However, when NYCHA was informed of the financial hardship by Plaintiffs, NYCHA "failed to timely recertify their incomes and recalculate monthly rent payments to reflect this hardship," leading residents to be charged rent that amounted to more than 30 percent of their household income, which exceeds the amount that public and subsidized housing residents are expected to pay in rent. *Id*. ¶¶ 8, 15. NYCHA has initiated consumer debt actions against NYCHA residents for unpaid, though miscalculated, rent. *Id*. ¶ 16.

Plaintiffs assert that a class of Black and Hispanic or Latino residents living in NYCHA housing experienced economic hardship during the pandemic and were eligible for assistance through the ERAP, but were discriminated against because of their race, national origin, disability, and/or source of income. *Id*. ¶ 5. The OTDA and Guinn

allegedly intentionally discouraged eligible NYCHA residents from applying for ERAP through "numerous published statements prominently advertising their policy of deprioritizing public and subsidized housing applicants." *Id*. ¶ 11. Instead, the OTDA and Guinn encouraged NYCHA residents to apply for OTDA loans to cover rent, which unlike ERAP funding, must be repaid. *Id*. ¶ 13. At the time ERAP funding ran out, many NYCHA residents had not received any financial benefit. *Id*. ¶ 10.

Plaintiffs Wanda Baez and Siide Gil-Frederick were subsidized tenants living in NYCHA housing who experienced financial hardship, applied for ERAP in 2021, but received no benefits "at the height of the pandemic." *Id*. ¶¶ 20, 21. Baez and Gil-Frederick did, however, receive ERAP benefits, for the maximum number of months available for subsidized tenants, in May 2024 and November 2023, prior to the commencement of this action, but after the height of the pandemic. *Id*. ¶¶ 20-21, 149; Doc. 18 ¶ 61. Plaintiff Danielle Johnson was a subsidized tenant living in NYCHA housing during the pandemic in 2021, experienced financial hardship, and "never received information about or was made aware of ERAP, and as such did not apply, though she would have wanted to and could have greatly benefited from assistance." *Id*. ¶ 22. All three plaintiffs amassed thousands of dollars in rent arrears as a result of not receiving ERAP funding. *Id*. ¶¶ 20-22. Plaintiff RRPH, is "a 501(c)(3) member organization consisting of tenants who reside in public housing across the five boroughs of New York City," advocates on behalf of thousands of NYCHA residents who experienced financial hardship, applied or wanted to apply for ERAP, and received no benefits. *Id*. ¶ 23.

## II.    PROCEDURAL HISTORY

Plaintiffs filed the initial complaint on April 30, 2024. Doc. 1. The FAC was filed on July, 25, 2024. Doc. 40. The FAC alleges seven causes of action asserting a violation of the FHA, Title VI of the Civil Rights Act of 1964, and New York State Human Rights Laws, as well as negligence. *Id*.

4

NYCHA filed a motion to dismiss on August, 16, 2024, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing,[2] and 12(b)(6) for failure to state a claim. Doc. 51.  Guinn and OTDA filed a motion to dismiss on September 27, 2024, also pursuant to Rules 12(b)(1) and 12(b)(6).  Doc. 55.

III.    **LEGAL STANDARD**

   A.  **Lack of Standing and Subject-Matter Jurisdiction Pursuant to Rule 12(b)(1)**

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. National Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject-mater jurisdiction as the "threshold question" (quotation marks omitted)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted).  "Because standing is challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Services of Connecticut Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (internal quotation marks and citation omitted).  However, the burden remains on the plaintiff, as the party invoking federal jurisdiction, to establish its standing as the proper party to bring an action.  *Selevan v. N.Y. Thruway Authority*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and

---

[2] NYCHA does not say in its notice of motion that it is moving pursuant to 12(b)(1), but argues lack of standing and subject matter jurisdiction.

if the plaintiff fails to "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not have standing under Article III. (internal quotations marks and citation omitted)).

In resolving a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).

**B.  Failure to State a Claim Pursuant to Rule 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (citing *Twombly*, 550 U.S. at 556).  However, this "flexible plausibility standard" is not a heightened pleading standard.  *In re Elevator Antitrust Litigation*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted).  Therefore, "a complaint … does not need detailed factual allegations" to survive a motion to dismiss. *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F.Supp.2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks

6

and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Doe v. New York University*, 20 Civ. 1343 (GHW), 2021 WL 1226384, at 10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## IV.   STATE DEFENDANTS

### A.  Lack of Article III Standing

OTDA and Guinn (collectively, "State Defendants"), are moving to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). When a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, such as Rule 12(b)(6), "the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association.*, 896 F.2d 674, 678 (2d Cir. 1990).

OTDA argues that the plaintiffs have not shown any injuries traceable to the actions of the State Defendants, particularly noting that issues regarding NYCHA are outside OTDA's purview. Doc. 56 at 6-7. The Court agrees that Plaintiffs do not plausibly allege that the OTDA had any involvement with NYCHA's purported failure to recertify the income of tenants who received subsidized housing benefits. While OTDA managed the federal funding that was to be distributed as part of the ERAP, it did not oversee or supervise NYCHA and had no control over their actions and decisions. *Id*. at 7. Although indirect causation is "not necessarily fatal to standing" it "may make it substantially more difficult to meet the minimum requirements of Art. III: To establish

that, in fact, the asserted injury was the consequence of the defendant's actions, or that prospective relief will remove the harm." *Warth v. Seldin*, 422 U.S. 490, 507 (1975).

### B. Commissioner Guinn is Entitled to Qualified Immunity

Defendants argue that Commissioner Guinn is entitled to qualified immunity because a reasonable official would not have understood their actions to be discriminatory. Doc. 56 at 16. OTDA further argues that Guinn cannot be held liable under § 1983 as the actions attributed to her, not only fail to constitute a violation of clearly established rights, but stem from her role in executive state policy rather than from personal discriminatory intent. *Id*. at 15.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (internal quotation marks omitted). Accordingly, the Supreme Court has "emphasized that qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987). The Court may grant a motion to dismiss on qualified immunity grounds where the defense is based on facts that appear on the face of the complaint. *Looney v. Black*, 702 F.3d 701, 710-11 (2d Cir. 2012) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)).

"Qualified immunity was created to shield government officials from civil liability for the performance of discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Atwater v. City of Lago Vista*, 532 U.S. 318, 367 (2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Fabrikant*, 691 F.3d at 212 (internal quotation marks omitted). In determining if a particular right was clearly established, the Court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit

8

has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (citing *Young v. County of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998)). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in [the] defendant's position should know about the constitutionality of the conduct." *Phillips v. County of Orange*, 894 F.Supp.2d 345, 385 (S.D.N.Y. 2012) (quoting *Young*, 160 F.3d at 903) (internal quotation marks omitted).

The Supreme Court has instructed that "when a qualified immunity defense is asserted, a court should consider the specific scope and nature of a defendant's qualified immunity claim …. [as] determination of whether the right at issue was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 386 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (internal quotation marks omitted). In other words, the Court must ask whether the right at issue was established "in a particularized sense so that the contours of the right [were] clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 661 (2012) (internal quotation marks omitted). Although a case directly on point is not required to demonstrate that a right is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Fabrikant*, 691 F.3d at 213 (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074 (2011)); *see also Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004) (internal quotation marks omitted) ("Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." (citing *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999))).

Because no Supreme Court or Second Circuit precedent exists that clearly establishes that an "emergency program, enacted during an unprecedented pandemic, would violate antidiscrimination law by deprioritizing subsidized tenants," the Court concludes that a reasonable official would not have understood their actions to be

discriminatory. Doc. 56 at 16. As a preliminary matter, the "challenged conduct involved enforcement of a presumptively valid statute." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 102 (2d Cir. 2003) (stating that the enforcement of a presumptively valid statute creates a heavy presumption in favor of qualified immunity and holding that the State of Connecticut was entitled to qualified immunity). Here, Guinn, in her position as Commissioner of OTDA, had the authority to implement CERAP, which is a statute enacted by the Legislature. Thus, Commissioner Guinn is entitled to qualified immunity, *see Ashcroft*, 131 S.Ct. at 2083 (2011), and Defendants' motion to dismiss all claims against her is GRANTED.

### C. Claims Under NYSHRL and the FHA Against OTDA Are Barred by Sovereign Immunity

State organizations are generally protected under the doctrine of sovereign immunity, which bars suits against states and their instrumentalities in federal court unless the state has waived its immunity or Congress has validly abrogated it. *Sunnen v. N.Y. State Department of Health*, No. 17-CV-1014, 2018 WL 3611978 at 4 (S.D.N.Y. July 27, 2018); *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989). "New Yok State has not consented or waived its sovereign immunity to suits arising under the NYSHRL," and there is no clear language contained in the FHA that would indicate that "Congress intended to abrogate sovereign immunity." *Sunnen*, 2018 WL 3611978 (citing *Widomski v. State University of New York at Orange*, 933 F.Supp.2d 534, 554 n.16 (S.D.N.Y. 2013)); *Dellmuth*, 491 U.S. at 230 (quoting *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985)); *McCardell v. United States Department of Housing & Urban Development*, 794 F.3d 510, 522 (5th Cir. 2015) ("The language of the Fair Housing Act does not make 'unmistakably clear' that Congress intended to abrogate. It contains no provision evidencing such intent.").

Still, Plaintiff's argue that federal funding may impose conditions on state organizations that can strip them of sovereign immunity. Doc. 61 at 2. However, courts

require a clear and knowing waiver of immunity by the state. *Garcia v. State University of N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 104 (2d Cir. 2001). In *Garcia*, the Second Circuit found that New York did not knowingly waive its sovereign immunity under the Rehabilitation Act by accepting federal funds, as an effective waiver requires an intentional relinquishment of a known right. *Id*. Since there is no clear language to indicate the waiver of sovereign immunity, and accepting federal funds does not bar a state organization from sovereign immunity, the Court agrees that OTDA, as a state organization, is subject to sovereign immunity. Therefore, the motion to dismiss all claims against OTDA is GRANTED.

## V.    NYCHA

### A.  Lack of Article III Standing for Individual Plaintiffs

Defendants challenge the standing of all three individual plaintiffs, arguing that none have sufficiently alleged the type of concrete and particularized injury necessary to maintain constitutional standing. "Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corporation v. Cuno*, 547 U.S. 332, 347 (2006)). Three elements form the constitutional minimum of standing, under Article III. First, the plaintiff must have suffered an invasion of legally protected interest that is concrete and particularized, and actual or imminent. Second, the challenged conduct must have caused the plaintiff's injury. Third, it must be likely, not speculative, that a favorable decision by the court will redress the plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). The party invoking federal jurisdiction bears the burden of establishing standing. *Id*. at 561. If Plaintiffs lack Article III standing, this Court has no subject matter jurisdiction to hear the claims. *Central States Southeast and Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181,

198 (2d Cir. 2005) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998)).

The individual Plaintiff's do not have standing because it is only speculative that a favorable decision by the court will redress their purported injury. *Lujan*, 504 U.S. at 560-61. A "plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *DeShawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)); *see also Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." (internal quotation marks omitted) (quoting *Lyons*, 461 U.S. at 102)).

Here, there is no risk of future harm to the individual plaintiffs. Baez and Gil-Frederick actually received ERAP benefits and are unable to receive additional rental arrears, as each has received the maximum amount of funding under the ERAP, which is 12 months of arrears. Doc. 56 at 10; Doc. 18 ¶ 61. As a result, these plaintiffs cannot claim harm related to the deprivation of benefits, as they have received all of the benefits to which they are entitled.

Further, Johnson never applied for ERAP and therefore has failed to allege that the deprioritization of public and subsidized housing tenants caused her to suffer any form of harm, a requirement to establish standing. Doc. 56 at 11. Plaintiffs argue that Johnson's "self-inflicted injuries are nevertheless cognizable under Article III." Doc. 61 at 4. However, the Second Circuit has held that a plaintiff must submit to the challenged policy to establish standing and has found, for example, that individuals who did not apply for membership or benefits under allegedly discriminatory policies lacked standing. *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). Johnson must demonstrate that she was "able and ready" to apply but was prevented from doing so on equal footing due to the discriminatory policy. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109,

118 (2d Cir. 2025).  However, the FAC states that Johnson "was never made aware of ERAP, and so did not apply."  Doc. 40 ¶ 163.  Therefore, Johnson was not "able and ready to apply," and lacks standing to bring a claim against the NYCHA.

### B.  Lack of Article III Standing for RPPH

"[A]n association has standing to bring suit on behalf of its members when:  (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977).  In the Second Circuit, however, an organization only has standing to sue under § 1983 on its own behalf, not that of its members.  *New York State Citizen's Coalition for Children v. Velez*, 629 Fed. App'x 92, 93-95 (2d Cir. 2015) (summary order).  This is because the Second Circuit has interpreted the rights that § 1983 secures to be personal to those purportedly injured.  *League of Women Voters of Nassau County v. Nassau County Board of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984).  Therefore, for an organization to have standing it must independently satisfy the requirements of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Defendants argue that RPPH lacks standing because its mission does not align with the claim's plaintiffs are asserting regarding income recertifications.  Doc. 53 at 9. The mission of RPPH is "to preserve public housing by advocating for adequate funding, improving quality of services, and increasing residents' decision-making authority."  *Id*. The RPPH is known to have "fought against decisions to convert public housing developments to project-based Section 8 through the NYC Public Housing Preservation Trust and Permanent Affordability Commitment Together."  *Id*.  However, the claims asserted against NYCHA allege a failure to recertify tenant income, which RPPH argues has caused hardship to its members and impacted its advocacy efforts.  Doc. 58 at 5. While RPPH asserts that this issue affects public housing funding, the connection

between income recertification and RPPH's core mission of preserving public housing and opposing conversion to project-based Section 8 is tenuous. The second requirement set out in *Hunt*, 432 U.S. at 343, ensures that organizations do not litigate issues unrelated to their primary objectives. Allowing RPPH to assert standing based on a tenuous connection would effectively permit this Court to litigate any issue affecting its members, regardless of its relevance to the organizations stated mission.

RPPH also claims that it has had to divert resources away from its long-term opposition to programs like Permanent Affordability Commitment Together and Rental Assistance Demonstration to address NYCHA's alleged failure to recertify tenant income. Doc. 58 at 6. However, the Supreme Court has held that an organization cannot establish injury-in-fact simply by choosing to divert resources to address an issue. The Court recognized, in *Havens Reality Corporation v. Coleman*, 455 U.S. 363, 365 (1982), that an organization may establish standing if a defendant's actions cause a concrete and demonstrable injury to the organization's activities, with a consequent drain to the organization's resources. However, this requires more than a mere budgetary choice to address an issue. The defendant's actions must directly impede the organization's ability to carry out its mission. *Id*.

Here, RPPH's diversion of resources to address NYCHA's actions does not constitute a concrete and demonstrable injury to its activities. The alleged failure to recertify tenant income does not directly impede RPPH's ability to advocate for public housing preservation or oppose conservation to project-based Section 8. Its decision to nonetheless spend funds to involve itself in this litigation is insufficient to establish standing. Therefore, this Court finds that RPHH lacks standing under Article III.

### C. Statute of Limitations

NYCHA states that the Fair Housing Act (FHA) claims are time-barred by the two-year statute of limitations. Doc. 52 at 2. Under the FHA, "[a]n aggrieved person may commence a civil action … no later than 2 years after the occurrence of the

termination of an alleged discriminatory housing practice … to obtain appropriate relief with respect to such discriminatory housing practice[.]"  42 U.S.C. § 3613(a)(1)(A); *see also Logan v. Matveevskii*, 57 F.Supp.3d 234, 267 (S.D.N.Y. 2014).  Plaintiffs argue that the two-year statute of limitations is not applicable, as the NYCHA has continuously failed to recertify the income and recalculate the monthly rent payments of each Plaintiff. Doc. 58 at 6.

An interim recertification change is to be made by the NYCHA within a 30-day time period following the report of a change in income, which can include formal documentation or an ERAP application.  Doc. 53 at 6, 18.  Here, Gil-Frederick and Baez applied for ERAP in June 2021 and August 2021, respectively, meaning NYCHA should have completed their recertification and recalculation by September 2021 and July 2021, but it was never done.  Doc. 40 at 21; Doc. 58 at 6.  Further, Gil-Frederick submitted forms required for annual recertification on December 30, 2020, and by December 2023, she still had not been certified.  Doc. 58 at 6.  Johnson reported a change in household income in 2020 and she too was never certified.  *Id.*

Under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations, "so long as they either are sufficiently related to incidents that fall within the statutory period or are part of a systematic policy or practice of discrimination that took place, at least in part, within the limitations period." *National Railroad Passenger Corporation. v. Morgan*, 536 U.S. 101, 105 (2002) (internal quotation marks omitted).  In the housing context, courts have applied the continuing violation doctrine "where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period," for example, where a housing complex had an ongoing policy of excluding and failing to accommodate disabled persons."  *See Eastern Paralyzed Veterans Association v. Lazarus-Burman Associates*, 133 F.Supp.2d 203, 212-

13 (E.D.N.Y. 2001); *Pantoja v. Scott*, 96 Civ. 8593 (AJP), 2001 WL 1313358 at 1 (S.D.N.Y. Oct. 26, 2001). Although the continuing violation doctrine applies to claims involving an "ongoing discriminatory policy or custom," *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 125, 156 (2d Cir. 2012), it does not apply to "discrete acts" or "separate" actions, such as a denial of secondary financing and theft of mortgage proceeds. *Morgan*, 536 U.S. at 114; *see also Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks omitted); *Pantoja*, 2001 WL 1313358, at 10 (collecting cases). Such discrete actions, even if undertaken by the same entity for a common discriminatory purpose, do not comprise a continuing violation. *Id*. at 11.

The continuing violation doctrine is inapplicable here. Plaintiffs argue that NYCHA's continuous failure to recertify the incomes and recalculate the monthly rent due for each individual plaintiff, and RPPH members, is sufficient to trigger the doctrine. Doc. 58 at 6. However, the continuing violation doctrine, "does not apply where a plaintiff was on notice of what [he] believed was discrimination but failed to act in preservation of [his] rights in spite of [his] knowledge." *Lee Ave. Tenants Association by Sanchez v. Steinmetz*, 330 F.Supp.3d 778, 792 (E.D.N.Y. 2018) (internal quotation marks omitted). No tolling of the statute applies here as the Plaintiffs were on notice of sufficient facts about the alleged discrimination significantly before the lawsuit. Plaintiffs were aware of each violation in the month that followed the submission of documentation for recertification or an ERAP application. Baez was on notice of the violation in September 2021, Gil-Frederick was on notice of the violations in January 2021 and July 2021, and Johnson was on notice of the violation in 2020. Doc. 58 at 6-7. Plaintiff's continued to allow their arrears to accrue during the limitations period, which expired come May 2024. Doc. 53 at 12.

As a result of not timely receiving ERAP funding, NYCHA commenced rent collection proceedings against multiple NYCHA residents, including Baez, Johnson, and other members represented by the RPPH. FAC ¶¶ 115-118. However, when addressing

discrimination claims under the FHA, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of that act became painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *see Board of Education of North Rockland Center School District v. C.M. on behalf of P.G.*, 744 F. App'x. 7, 9 (2d Cir. 2018). The Court rejects Plaintiff's arguments regarding continuing violations.

Therefore, the motion to dismiss all claims against NYCHA, including all allegations of disparate treatment, disparate impact, and violation of Title VI is GRANTED on the basis of a lack of standing and that this suit was filed outside the statute of limitations.

As this motion was granted on procedural grounds, the Court need not reach the merits of the discrimination claim. *Otegbade v. New York City Administration for Children Services*, 12-cv-6298 (KPF), 2015 WL 851631, at 1 (S.D.N.Y. Feb. 27, 2015) (declining to reach the merits because Defendants' motion to dismiss was granted on procedural grounds).

VI.    **CONCLUSION**

For the reasons set forth above, the New York State Office of Temporary and Disability Assistance, the New York City Housing Authority, and Barbara C. Guinn's Motions to Dismiss the First Amended Complaint are GRANTED. The Clerk of the Court is respectfully directed to terminate the pending motions, Docs. 51, 55, and close the case.

It is SO ORDERED.

Dated:    March 28, 2025
          New York, New York

_____
                    EDGARDO RAMOS, U.S.D.J.